708 A.2d 1205

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. JEANIE TURNER, A/K/A DONNA TURNER,
DEFENDANT–APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. SHEILA TURNER, DEFENDANT–APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. JEANETTE BILLINGS, DEFENDANTS–
APPELLANTS.

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
DONALD TURNER, SR., DEFENDANT–APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
DONALD TURNER, JR., DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted February 24, 1998—Decided March 25, 1998.

---

Before Judges DREIER, KEEFE and PAUL G. LEVY.

*Ivelisse Torres,* Public Defender, attorney for appellant Jeanie Turner (*Arthur M. Peslak,* Designated Counsel, of counsel and on the brief).

*Ivelisse Torres,* Public Defender, attorney for appellant Sheila Turner (*Ruth Bove Carlucci,* Assistant Deputy Public Defender, of counsel and on the brief).

*Eldridge Hawkins,* attorney for appellants Jeanette Billings and Donald Turner, Sr.

*Ivelisse Torres,* Public Defender, attorney for appellant Donald Turner, Jr. (*Richard Sparaco,* Designated Counsel, of counsel and on the brief).

*Clifford J. Minor,* Essex County Prosecutor, attorney for respondent (*Maryann K. Lynch,* Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

PAUL G. LEVY, J.A.D.

A family dispute erupted between defendants and their two cousins over the title to a residence in East Orange. The conflict eventuated in this criminal prosecution culminating in defendants' convictions of criminal restraint, assault and illegal possession of a handgun. Each defendant was sentenced to a net minimum term of three years imprisonment, and each sentence was stayed pending appeal. The appeals of the five defendants have been calendared back-to-back, and we have combined them in this single opinion.

### Facts

A reasonable jury, although not compelled to, could have found the following facts beyond a reasonable doubt. *See State v. Brown*, 80 *N.J.* 587, 591–97, 404 *A.*2d 1111 (1979).

On April 29, 1993, Georgia Rose lived in a house in East Orange, with her brothers and her nine-year-old daughter Shanita. She had resided there for approximately twenty years. Georgia moved to this address, the home of her guardian and great aunt Mabel Upshaw, when her own mother died. Upshaw and her two sisters, Esther Billings and Fannie Bryant, had owned the house. Georgia and her brothers referred to Mabel Upshaw as their "mother" and Esther Billings as their "grandmother." After Fannie Bryant and Mabel Upshaw died, Esther continued to live at the house.

Esther's daughter is defendant Jeanette Billings who is married to defendant Donald Turner, Sr., and their three children are defendants Jeanie Turner, Sheila Turner and Donald Turner, Jr. Georgia referred to defendants as her "cousins." Defendants visited Esther frequently to care for her and bring her food and water. Subsequent to Upshaw's death, the electricity, heat and water were shut off periodically. Georgia, who received welfare assistance, periodically gave her brother Leroy some money to pay household bills.

On April 29, 1993, Esther Billings no longer lived in the house, which had fallen into disrepair. Georgia had made arrangements to move the next day and had already removed the dining room furniture and a bedroom set. After Georgia's daughter left for school, Sheila Turner arrived with two gallons of water. The two women conversed in the kitchen, but Georgia began to feel afraid and walked out onto the porch where Donald Turner, Jr. and Donald Turner, Sr. were standing. Georgia spoke to Donald, Jr. on the porch and then ran towards her neighbor's house. Sheila and Donald, Jr. chased Georgia back to the house. Georgia did not see Donald, Jr. again on that day.

At the front door, Donald, Sr. put handcuffs on Georgia. His daughters, Jeanie and Sheila, were present at the time. Georgia was then brought into the living room on the first floor. While Georgia was sitting handcuffed on a chair with her feet tied with cord, Donald, Sr. stood in front of her demanding to know the location of the deed to the house. Georgia replied that she did not know what he was talking about. Sheila, Jeanie, and their mother, Jeanette Billings, who was also in the house, joined the inquiry and asked Georgia about the location of the deed. These four defendants searched the house, apparently to no avail.

Donald, Sr. and Jeanette then brought Georgia up to a bedroom on the second floor of the house. With Sheila's assistance, they tied Georgia's legs to a chair with neckties and thick tape and bound her legs with weights. Her arms were handcuffed behind her.

Donald, Sr. and Jeanette repeatedly asked Georgia about the location of the deed, and she kept telling them that she did not know. While making these inquiries, they continued to search for the deed. Georgia heard banging noises emanating from other parts of the house during this time. In the interim, Donald, Sr. removed the handcuffs and tied Georgia's arms behind her chair.

At one point, Jeanette turned around and said an audible prayer by the dresser and then produced a small, silver gun which she placed into Georgia's mouth. This was the first time that Georgia

had ever seen this gun. Jeanette and Donald, Sr. were the only defendants present in the room during the few seconds that the gun was in Georgia's mouth and the door was closed at the time. While the gun was in Georgia's mouth, Jeanette and Donald, Sr. told her to "shut up." Jeanette told Georgia that if she did not find the deed, "I will kill you, you will be dead at three o'clock."

When Donald, Sr. and Jeanette left the room where Georgia was being held, Sheila and Jeanie entered the room to watch over their captive. Jeanette returned from time to time.

[At the request of the court, only those portions of the opinion concerning Donald Turner, Sr. merit publication, and, therefore, the other portions are omitted.]

## Procedure

The five members of the Turner family were tried together on a multi-count indictment charging each with second-degree conspiracy to commit aggravated assault, second-degree aggravated assault by causing or attempting to cause serious bodily injury to Georgia Rose and Zachary Rose, second-degree kidnapping of Georgia Rose and Zachary Rose, third-degree unlawful possession of a handgun without a permit, and second-degree possession of a handgun for an unlawful purpose. At the end of the trial, on motion of defendants, the judge dismissed the second-degree aggravated assault charges, but he substituted a charge of fourth-degree aggravated assault as to Georgia Rose and simple assault as to Zachary Rose.

[At the request of the court, only those portions of the opinion concerning Donald Turner, Sr. merit publication, and, therefore, the other portions are omitted.]

Donald Turner, Sr. was convicted of simple assault, third-degree criminal restraint (both lesser degrees of the originally charged crimes), third-degree unlawful possession of a weapon and second-degree possession of a weapon for an unlawful purpose. He was sentenced to a four-year term with three years of parole ineligibili-

ty for second-degree possession of a weapon for an unlawful purpose and ordered to have no contact with the victims; concurrent three-year terms were imposed for criminal restraint and unlawful possession of a weapon; a concurrent three-month term was imposed for simple assault; and he was fined $300 for the V.C.C.B. He was acquitted of conspiracy and the counts for aggravated assault and kidnapping of Zachary Rose.

Jeanette Billings was convicted of fourth-degree aggravated assault, third-degree criminal restraint (both lesser degrees of the originally charged crimes), third-degree unlawful possession of a weapon and second-degree possession of a weapon for an unlawful purpose. She was sentenced to a four year term with three years of parole ineligibility for second-degree possession of a weapon for an unlawful purpose and ordered to have no contact with the victims; the conviction for aggravated assault of Georgia was merged with the second-degree weapon charge; concurrent three-year terms were imposed for criminal restraint and unlawful possession of a weapon; and a $200 V.C.C.B. fine. Like Donald Sr., she was acquitted of conspiracy and the counts for aggravated assault and kidnapping of Zachary Rose.

[At the request of the court, only those portions of the opinion concerning Donald Turner, Sr. merit publication, and, therefore, the other portions are omitted.]

Prior to sentencing, all defendants moved for judgments of acquittal n.o.v. or in the alternative for a new trial, but the judge denied each motion. The State moved for forfeiture of public employment by Donald Turner, Sr., Jeanette Billings, Jeanie Turner and Sheila Turner pursuant to *N.J.S.A.* 2C:51-2, and the judge granted that motion. Billings requested the prosecutor to consent to sentencing under *N.J.S.A.* 2C:43-6.2 which embodies the "escape valve" provision to the minimum term requirement of the Graves Act. The prosecutor denied the request. Billings, joined by the other defendants, moved for a hearing to determine whether the prosecutor had abused his discretion in denying the request, alleging that a manifest injustice had occurred. The

assignment judge denied the motion, finding defendants had failed to demonstrate clearly and convincingly that the prosecutor's refusal to consent to a waiver of the mandatory minimum term was arbitrary or capricious.

[At the request of the court, only those portions of the opinion concerning Donald Turner, Sr. merit publication, and, therefore, the other portions are omitted.]

### *Jeanette Billings and Donald Turner, Sr.*

On appeal, these two defendants jointly contend:

POINT I   THE CONVICTION OF JEANETTE BILLINGS-TURNER SHOULD BE REVERSED BECAUSE OF IMPROPER JURY INSTRUCTIONS AND ABSENCE OF CONSISTENT TESTIMONY.

POINT II   THE CONVICTIONS OF JEANETTE BILLINGS-TURNER AND DONALD TURNER, SR. (AND THE OTHER DEFENDANTS) CANNOT STAND IN LIGHT OF *JENKINS.*

POINT III   .THE GRAND JURY'S BILL AMOUNTS TO MISCONDUCT AND AN ABDICATION OF AUTHORITY TO THE PROSECUTOR IN THAT THERE IS NO EVIDENCE TO SUPPORT THE CHARGE OF CONSPIRACY TO COMMIT AGGRAVATED ASSAULT.

POINT IV   AS TO THE CHARGES AGAINST JEANETTE BILLINGS FOR AGGRAVATED ASSAULT, KIDNAPPING AND POSSESSION OF A WEAPON, THE GRAND JURY'S BILL AMOUNTS TO MISCONDUCT AND AN ABDICATION OF AUTHORITY TO THE PROSECUTOR IN THAT THERE IS NOT EVIDENCE TO SUPPORT THE CHARGES.

POINT V   THE INDICTMENT AND PROSECUTION FOR CONSPIRACY SHOULD BE DISMISSED SINCE THERE WAS A FAILURE BY THE STATE TO ALLEGE AN AGREEMENT BETWEEN THE DEFENDANTS TO COMMIT AN UNLAWFUL ACT.

POINT VI   THE TRIAL COURT ERRED BY DENYING DEFENDANT'S MOTION TO SET ASIDE THE VERDICT AS BEING AGAINST THE WEIGHT OF THE EVIDENCE, OR IN THE ALTERNATIVE TO ORDER A NEW TRIAL AS THE VERDICT OF THE JURY WAS A MANIFEST DENIAL OF JUSTICE.

POINT VII   THE TRIAL COURT ERRED IN DENYING DEFENDANTS MOTIONS TO DISMISS INDICTMENT AND PROSECUTION AT TRIAL WAS INSUFFICIENT TO SUPPORT A FINDING OF GUILT BEYOND A REASONABLE DOUBT.

POINT VIII   ALL ERRORS OF TRIAL CREATED A MANIFEST DENIAL OF JUSTICE TO DEFENDANTS REQUIRING VACATING OF GUILTY VERDICTS AND ENTRY OF ORDER OF ACQUITTAL FOR A NEW TRIAL.

POINT IX  THE TRIAL COURT ERRED IN GIVING THE COUNT II CHARGE TO THE JURY AND IN ITS JURY INSTRUCTIONS.

First, these defendants assert that the trial judge erred in failing to instruct the jury that Georgia Rose's testimony before the Grand Jury was inconsistent with her trial testimony and could be used as substantive evidence. At trial, Georgia testified that only these defendants, father and mother, were present in the room and that she never saw Jeanie with a gun, while before the Grand Jury, she also said that "Ginny" (spelled phonetically by the court reporter) was the person who placed the gun in Georgia's mouth. During his charge to the jury, the judge did not make specific reference to Georgia's Grand Jury testimony. However, he did instruct the jurors that they could consider any prior inconsistent statements made by the witnesses in evaluating their credibility. Since Billings did not object to the judge's failure to instruct the jury that Georgia's allegedly inconsistent Grand Jury testimony could be utilized as substantive evidence before the jury retired to consider its verdict as required by R. 1:7–2, she must demonstrate plain error in order to succeed on appeal.

While Georgia's testimony before the Grand Jury was admissible as proof of the matter asserted, provided it met the requirements of N.J.R.E. 803(a)(1), we have already explained that her testimony was not truly a prior inconsistent statement. We conclude that the general instruction on credibility sufficed, and the lack of a specific instruction as to use of Georgia's Grand Jury testimony as substantive evidence was not plain error. See State v. Ramos, 217 N.J.Super. 530, 538, 526 A.2d 284 (App.Div.1987)(refusal to admit statement that was "not substantially different" from trial testimony as substantive evidence held harmless error).

Next, Donald Turner, Sr., contends the judge erred in denying his motion for a judgment of acquittal notwithstanding the verdict on the offense of possession of a handgun for an unlawful purpose, because his acquittal of fourth-degree aggravated assault, charged to the jury as a lesser included offense of second-degree aggravat-

ed assault, precluded his conviction of possession of a handgun for an unlawful purpose as a matter of law and rendered the verdicts on these two offenses fatally inconsistent.[1]

Jurors are not qualified to decide, without guidance, which purposes for possessing a gun are lawful under *N.J.S.A.* 2C:39–4(a) and which are not. *State v. Diaz,* 144 *N.J.* 628, 640, 677 *A.*2d 1120 (1996); *State v. Jenkins,* 234 *N.J.Super.* 311, 316, 560 *A.*2d 1240 (App.Div.1989). For that reason, a jury instruction on a charge of gun possession for an unlawful purpose must include an identification of such unlawful purposes as may be suggested by the evidence plus an instruction that the jury may not convict based on its own notion of the unlawfulness of some other undescribed purpose. *State v. Villar,* 150 *N.J.* 503, 511, 696 *A.*2d 674 (1997); *State v. Johnson,* 287 *N.J.Super.* 247, 263, 670 *A.*2d 1100 (App.Div.), *certif. denied,* 144 *N.J.* 587, 677 *A.*2d 759 (1996); *State v. Jenkins, supra,* 234 *N.J.Super.* at 316, 560 *A.*2d 1240.

Here, the judge identified the unlawful purpose during his charge as the aggravated assault of Georgia by pointing a firearm at her. This was the only purpose the jury was directed to consider, and it was the identical purpose they were told to consider when deliberating on the assault charge. In *Jenkins, id.* at 315, 560 *A.*2d 1240, we stated in dicta that "if acquittal of the accompanying charge erases the identification of the unlawful purpose, the court may not permit the jury to convict on the basis of speculation as to what possible purposes qualify as unlawful." Donald, Sr. relies on this statement in support of his argument that his acquittal of fourth-degree aggravated assault erased the identification of the unlawful purpose underlying the charge of possession of a weapon for an unlawful purpose.

---

[1] This argument is contained in Point II of Jeanette's brief on which Donald, Sr. relies in support of his appeal. Although Jeanette attempts to rely on this same argument, it is obviously inapplicable to her since she was convicted of fourth-degree aggravated assault.

In *State v. Petties*, 139 *N.J.* 310, 654 *A.2d* 979 (1995), the defendant had been acquitted of assault charges but convicted of the weapons-possession charges. The Court observed that "[t]o conclude that every acquittal of the substantive charge involving the use of a gun requires an erasure of the charge of possession for an unlawful purpose would be an overreading of *Jenkins*." *Id.* at 317, 560 *A.2d* 1240 (citation omitted). However, in reinstating the weapons-possession convictions in *Petties,* the Court focused on the period of time in which the defendant possessed the weapon. There the defendant had been at the scene of the crime and then left, apparently obtained two weapons elsewhere, and returned to the scene where the criminal events occurred. In that context, it was natural for the Court to conclude that "as long as the jury could have found that possession for an unlawful purpose existed at or before the confrontation at [the victim's] house (and surely the jury could have so found), then the jury was entitled to return a verdict of guilty for a violation of *N.J.S.A.* 2C:39–4a."

Therefore, the Court directed the trial judge to instruct the jury "that the criminal purpose or state of mind may 'exist at *whatever time* the State claims that the possessory offense took place,' and relate the specific unlawful purpose charged to the facts of the case." *Id.* at 321, 654 *A.2d* 979 (citations omitted). In this case, however, the time of possession by Donald, Sr. was only for the moments that Billings pointed the gun at Georgia. There was no indication that he was aware of the gun before Billings brought it out or after Georgia was threatened with it. Although the Court has held that merger of offenses (a topic treated similarly to inconsistent verdicts) is not required when there is evidence of "a broader purpose to use the weapon unlawfully" than the purpose to use it against the victim of the substantive offense, that result was predicated on "the trial court [giving] a proper jury instruction that does not include an instruction that the unlawful purpose is the same as using the weapon to commit the substantive offense." *State v. Diaz,* 144 *N.J.* 628, 638–39, 677 *A.2d* 1120 (1996).

Here the trial judge gave the identical instruction as to purpose when charging the jury on the substantive offense of assault as he did for the possessory offense. Under that circumstance, the rule of *State v. Jenkins, supra,* 234 *N.J.Super.* at 315, 560 *A.*2d 1240 applies because "acquittal of the accompanying charge erase[d] the identification of [Donald Sr.'s] unlawful purpose" in possessing the gun that Billings pointed at Georgia. Accordingly, we conclude that the conviction of Donald Turner, Sr. of possession of a weapon for an unlawful purpose must be reversed.

In defendants' third and fifth points, they challenge their indictment for second-degree conspiracy to commit aggravated assault. Since the jury acquitted each of them of this charge, there is no need for us to address these contentions.

■ After the State presented its opening, defendant Billings moved to dismiss the conspiracy, assault and kidnapping counts of the indictment, and all other defendants joined. The judge denied the motion. On appeal, defendant Billings contends in a fourth point that in the opening, the prosecutor stated that it was Donna Turner who placed the gun in Georgia Rose's mouth, and therefore those three charges against Billings should have been dismissed.

■ This argument was not brought to the attention of the trial judge but is raised here for the first time.[2] If it had been raised, the prosecutor could have explained his misstatement. As we already noted, the Grand Jury testimony is best understood in light of the trial testimony. There Georgia was able to explain that she knew the person who placed the gun in her mouth as "Janie," and she pointed out defendant Billings after mentioning that the person was "the mother" and was wearing a white headband. We reject this contention because defendant failed to object at trial and it does not constitute plain error. Moreover, trial courts should be cautious about granting dismissals on open-

---

[2] Defendants failed to state this in their brief, as required by *R.* 2:6–2(a)(1).

ing statements, because "[t]he better trial practice is to refuse to adjudicate a case on the opening of counsel." *State v. Lynch*, 79 *N.J.* 327, 336, 399 *A.2d* 629 (1979). *See also State v. Portock*, 205 *N.J.Super.* 499, 506, 501 *A.2d* 551 (App.Div.1985), *certif. denied*, 105 *N.J.* 579, 523 *A.2d* 208 (1986).

We have carefully examined the record in light of the remaining points in defendants' brief (POINTS VI through IX), and we conclude they are without merit and do not warrant discussion in a written opinion.

[At the request of the court, only those portions of the opinion concerning Donald Turner, Sr. merit publication, and, therefore, the other portions are omitted.]

### CONCLUSION

As to Jeanette Billings, on A–6777–93T2, we affirm all the convictions and sentences imposed.

As to Donald Turner, Sr., on A–6801–93T2, we affirm the convictions of simple assault, third-degree criminal restraint and third-degree unlawful possession of a weapon and the sentences imposed thereon, but we reverse the conviction of second-degree possession of a weapon for an unlawful purpose.