RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3999-14T1

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

B.D., JR.,

 Defendant-Appellant.
________________________________

 Submitted January 10, 2017 – Decided August 17, 2017

 Before Judges Reisner and Sumners.

 On appeal from Superior Court of New Jersey,
 Law Division, Salem County, Indictment No. 14-
 05-0334.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Mark H. Friedman, Assistant
 Deputy Public Defender, of counsel and on the
 brief).

 John T. Lenahan, Salem County Prosecutor,
 attorney for respondent (Marianne V. Morroni,
 Assistant Prosecutor, of counsel and on the
 brief).

PER CURIAM
 A jury found defendant B.D.,Jr.1 guilty of committing first-

degree aggravated sexual assault, N.J.S.A 2C:14-2(a), against his

daughter, S.D., between 1987 and 1993, while she was under the age

of thirteen. Defendant appeals from the judgment of conviction

and his fifteen-year prison sentence subject to five years of

parole ineligibility. After reviewing the record in light of the

applicable law, we affirm both the conviction and the sentence.

 I.

 At a Rule 104 (a) fresh complaint hearing, Be.D., defendant's

wife and S.D.'s stepmother, testified that in May 1997, S.D. told

her about the years of sexual abuse she suffered from defendant.

Be.D. also testified as to the context in which the disclosure

occurred. Be.D. recalled cutting short an out-of-town trip after

defendant telephoned her to tell her that S.D., sixteen years old

at the time, had run away from home. Before finding S.D., Be.D.

was able to reach her on the phone. S.D., hysterical and crying,

told Be.D. that she ran away from home because defendant failed

to heed S.D's warning not to peek at her when she was in the

bathroom.

 After Be.D. located S.D., she drove her to school, and during

the drive, S.D. revealed details about defendant's sexual abuse

1
 We use initials to preserve the confidentiality of the victim.
R. 1:38-3(c)(12).

 2 A-3999-14T1
over the course of many years. Again, S.D. was very emotional.

She told Be.D. that defendant liked her to dress up and wear high

heels, and that they engaged in oral sex. She also described a

scar on defendant's penis and alleged that he digitally penetrated

her anus and vagina. S.D. also showed Be.D. that she had been

cutting herself, "because she felt [the abuse] was her fault."

 When Be.D. and S.D. arrived at school, defendant was in the

parking lot and tried to get S.D. into his car. Be.D. testified

that S.D. refused, and was "hysterical[,] crying and, you know,

screaming, 'Don’t let him get me; don’t let him get me.'" About

a week later, Be.D. separated from defendant by moving out of

their home, with S.D. and her younger brother, B.D., joining her.

 The trial judge held that Be.D.'s testimony was admissible

as fresh complaint evidence based upon consideration of: the

nature, time, and place of the complaint; S.D.'s age at the time

of the complaint; the circumstances under which she made the

complaint; the complaint was against her father; S.D.'s conduct

at the time of her complaint; and the proofs S.D. offered to her

stepmother. As for the time it took S.D. to eventually reveal the

abuse, the judge reasoned:

 One, [] the victim remained in the defendant's
 home; two, the defendant threatened her; and
 three, [] he continued to abuse her in

 3 A-3999-14T1
 Tennessee 2 throughout this time as she is
 maturing, until she finally reaches the age
 of approximately 16 and indicates . . . to her
 stepmother that she had had enough . . .
 [T]hose factors are [] often discussed in our
 case law. And I would suggest that they
 adequately explain the delay. And what I mean
 by ‘delay’ . . . I want to make sure I’m pretty
 specific – there was no delay at least on the
 facts that I’ve gotten. . . . this isn’t a
 situation where the conduct stopped and five
 years later the victim made an allegation.

 At trial, S.D., then thirty-two years old, testified

regarding her parents' separation, and living with her brother,

defendant and Be.D. According to S.D., defendant's physical and

sexual assault began when she was between the ages of three and

five years old. When she was six, defendant was performing oral

sex on her, forcing her to perform oral sex on him, making her

watch pornographic movies in order to emulate what the women were

doing in those movies, and coercing her to get naked so that he

could suck on her toes, kiss every part of her body and ejaculate

on her. S.D. described, in detail, a scar on defendant’s penis

that he told her occurred when he was a child. Defendant made her

pay particular attention to the scar during oral sex because it

was sensitive. S.D. also testified that defendant digitally

2
 In addition to the sexual abuse incidents in New Jersey,
defendant and S.D. had lived in Tennessee, where defendant pled
guilty in 1998 to amended counts of sexual battery resulting in a
suspended sentence and probation.

 4 A-3999-14T1
penetrated her vaginally and anally, and attempted to penetrate

her vaginally with his penis on numerous occasions.

 S.D. testified that, at age seven, defendant was abusing her,

"several times a week to every day and sometimes more than once a

day," depending on when defendant's job took him away from home.

Although S.D. had doctor’s appointments while growing up, she did

not disclose the abuse, and she did not have any vaginal exams

that could have exposed sexual activity.

 When defendant wanted to have sex with S.D., he would wait

until Be.D. and her brother were not home, and then lock the door.

If S.D.'s brother did not accompany their stepmother when she left

the house, defendant would send him outside to do chores. There

were also times that defendant would take S.D. to a "house behind

the property that he was caretaker of" to abuse her. When

defendant could not get Be.D. and her brother out of the house,

he would take S.D. on rides in his car and force her to perform

oral sex on him in the car. If a car passed by with a driver who

could see inside their vehicle, defendant would slap S.D.'s head

away so no one could see what they were doing. Additionally, when

defendant worked driving an 18-wheeler tractor-trailer, he would

sometimes take S.D. with him, then force her to look at

pornographic magazines and engage in oral sex.

 5 A-3999-14T1
 If S.D. refused to have sex, defendant would choke her,

threaten her and her brother with homelessness, or assault her

brother in front of her. Defendant also claimed that he knew

people in the "mob" who would kill her and dispose of her body in

a barrel if she ever told anyone about having sex with him.

 After a speaker talked to her third-grade class about sexual

abuse, she recalled crying in class afterwards, but since no one

asked her why she was upset, she did not tell anyone about

defendant's abuse. S.D. also never told anyone at school because

she believed defendant's threats.

 S.D. stated that defendant's abuse made her punish herself

as she grew older. She cut herself, deprived herself of food or

made herself throw up, and attempted suicide.

 S.D. confirmed her stepmother's testimony about how in May

1997, she revealed defendant's sexually abusive conduct towards

her throughout her youth, and that thereafter, she never again

lived with defendant. She did not report defendant's conduct to

the police because when she relocated to Tennessee after moving

out of defendant's house, she was advised that she could not press

charges there for offenses occurring in New Jersey. She eventually

reported defendant's abuse to law enforcement in 2012, when New

Jersey State Police Detective Neal Everingham contacted her. She

admitted she did not tell Everingham that defendant had threatened

 6 A-3999-14T1
to kill her and place her in a barrel, or that she cried in the

third grade after a class speaker talked about sexual abuse.

 Everingham testified that he conducted an investigation into

defendant's alleged abuse after being contacted by the Salem County

Prosecutor's Office. 3 Based upon his training and experience

investigating sexual abuse cases, it was not uncommon for victims

to wait "sometimes years" before reporting the abuse because of

fear.

 Everingham stated that he had several telephone conversations

with S.D., because she was not living in New Jersey. S.D. told

him that on a regular basis between 1986 and 1993 in New Jersey,

defendant abused her through, "[o]ral sex, both given and received.

Sucking on toes, dress-up in adult clothing. . . reenacting of

pornographic videos or scenarios. Digital penetration, both

vaginal and anal."

 He also testified that in separate interviews, both S.D. and

Be.D. mentioned that defendant had a scar on the "underside of his

penis, just below the head [of the penis.]" A photograph of the

scar, obtained through a search warrant, was admitted into

evidence.

3
 The investigation was initiated as a result of B.D.'s report of
being sexually abused by defendant.

 7 A-3999-14T1
 The State also presented the expert testimony of Dr. Julie

Lippmann, a clinical child psychologist, regarding Child Sexual

Abuse Accommodation Syndrome (CSAAS). She did not comment on the

specific allegations against defendant, but explained that CSAAS

involves the often-delayed reporting of sexual abuse by child

victims who are "abused repeatedly, over and over again perhaps,

by someone that they love and trust; [such as] a parent . . . ."

 In addition, Be.D. reiterated the testimony she gave at the

fresh complaint hearing concerning S.D.'s revelation of

defendant's sexual abuse. She mentioned that defendant spent

more time with S.D. to the exclusion of his son, and that defendant

would send her out of the house on errands, like grocery shopping,

and suggest that she take his son with her. On cross-examination,

she confirmed that defendant did not drive an 18-wheeler when the

family lived in New Jersey, which controverted S.D.'s allegations

of sexual abuse in an 18-wheeler.

 Defendant exercised his right not to testify. After

deliberating, the jury found defendant guilty of first-degree

aggravated sexual assault.

 At sentencing, the judge denied defendant's request that he

not consider information related to a charge, dismissed the day

before the trial started, that defendant had sexually abused his

son at various times between 1987 and 1993. The judge found that

 8 A-3999-14T1
aggravating factors two, three, six, and nine applied. N.J.S.A.

2C:44-1(a)(2)(gravity and seriousness of harm inflicted on a

vulnerable victim); -1(a)(3)(the risk of re-offense); -1(a)(6)

(the extent of defendant's prior criminal record and the

seriousness of the current offense); and -1(a)(9) (the need for

deterrence). He also found that mitigating factors seven and ten

applied. N.J.S.A. 2C:44-1(b)(7)( no history of prior criminal or

delinquent conduct); and -1(b)(10)(likely to respond affirmatively

to probationary treatment). The judge determined that the

aggravating factors substantially outweighed the mitigating

factors, and sentenced defendant to a fifteen-year prison term,

with five years of parole ineligibility. This appeal followed.

 II.

 Defendant raises the following arguments for our

consideration:

 POINT I

 THE TRIAL COURT ERRED IN ALLOWING [BE.D.] TO
 TESTIFY ABOUT S.D.'S ACCUSATIONS AGAINST
 DEFENDANT BECAUSE THAT EVIDENCE DID NOT MEET
 THE REQUIREMENTS OF THE FRESH COMPLAINT
 DOCTRINE.

 POINT II

 THE TRIAL COURT ERRED BY FAILING TO INSTRUCT
 THE JURY THAT S.D.'S PRIOR INCONSISTENT
 STATEMENTS IN POLICE WITNESSES' REPORTS WERE
 ADMISSIBLE AS SUBSTANTIVE EVIDENCE. (Not
 Raised Below).

 9 A-3999-14T1
 POINT III

 DEFENDANT'S SENTENCE IS MANIFESTLY EXCESSIVE
 AND UNDULY PUNITIVE BECAUSE IT IS FOUNDED ON
 IMPROPER FINDINGS REGARDING AGGRAVATING
 FACTORS.

 Defendant argues in Point I, that the trial judge violated

his rights to a fair trial and due process by misapplying the

fresh-complaint doctrine in admitting S.D.'s out-of-court

statements to her stepmother reporting defendant's sexual abuse.

Specifically, he argues that the testimony did not qualify as

fresh complaint evidence because the allegations were not

spontaneous and were the result of a series of questions from

Be.D. We disagree.

 In reviewing the fresh-complaint doctrine, our Supreme Court

has stated:

 That doctrine allows the admission of evidence
 of a victim's complaint of sexual abuse,
 otherwise inadmissible as hearsay, to negate
 the inference that the victim's initial
 silence or delay indicates that the charge is
 fabricated. See State v. Hill, 121 N.J. 150,
 163 (1990); State v. Balles, 47 N.J. 331, 338
 (1966), cert. denied, 388 U.S. 461, 87 S. Ct.
 2120, 18 L. Ed. 2d 1321 (1967). In order to
 qualify as fresh-complaint evidence, the
 victim's statement must have been made
 spontaneously and voluntarily, within a
 reasonable time after the alleged assault, to
 a person the victim would ordinarily turn to
 for support. State v W.B., 205 N.J. 588, 616
 (2011); Hill, supra, 121 N.J. at 163 (citing
 State v. Tirone, 64 N.J. 222, 226-27(1974));

 10 A-3999-14T1
 Balles, supra, 47 N.J. at 338-39. These
 requirements are relaxed when they are applied
 to juvenile victims. State v. Bethune, 121
 N.J. 137, 143-44 (1990). This Court has
 recognized that children may be "too
 frightened and embarrassed to talk about" the
 sexual abuse they have encountered, and
 therefore, juvenile victims are given
 additional time to complain, and their
 complaint may be elicited through non-coercive
 questioning. Ibid.

 [State v. R.K., 220 N.J. 444, 455 (2015).]

"[T]he fresh complaint rule was developed to counteract the

persistent 'timing myth' that victims of sexual assault would cry

out and alert others to the crime." W.B., supra, 205 N.J. at 616

(quoting State v. P.H., 178 N.J. 378, 392 (2004)). "The rule

allows the State to neutralize this myth by introducing evidence

that the victim did indeed make a complaint within a reasonable

time after the alleged assault." Ibid.

 The Court has cautioned that a child's statements

 made directly in response to coercive
 questioning are inadmissible under the fresh-
 complaint rule, because coercive
 interrogation robs those statements of the
 self-motivation necessary to qualify as fresh
 complaint.

 . . . .

 There is a line, however, between questioning
 that merely precedes a complaint of sexual
 abuse and coercive questioning. We leave it
 to the trial court to determine when that line
 is crossed. In each case the trial court must

 11 A-3999-14T1
 examine the degree of coercion involved in the
 questioning of the child and determine whether
 the child's complaint was spontaneous or
 directly in response to the interrogation.
 Among the factors the court should consider
 in arriving at its determination are the age
 of the child, the child's relationship with
 the interviewer, the circumstances under which
 the interrogation takes place, whether the
 child initiated the discussion, the type of
 questions asked, whether they were leading,
 and their specificity regarding the alleged
 abuser and the acts alleged.

 [State v. Bethune, 121 N.J. 137, 145 (1990).]

 Applying these principles, we discern no abuse of the judge's

discretion in admitting Be.D.'s testimony. Our review of the

record demonstrates that S.D.'s statements were general inquiries

about why S.D. was upset and what happened, and by no means were

coercive. Moreover, Be.D.'s testimony was not the sole account

of S.D.'s complaint or defendant's sexual abuse of S.D. See ibid.

(fresh complaint to social worker "was not of singular weight or

importance at trial."). The jury heard S.D.'s first-hand account

of her complaint to Be.D. and the constant sexual abuse inflicted

upon her by defendant throughout her youth. Further, the

credibility of Be.D.'s and S.D.'s recollections were both subject

to cross-examination. See ibid.

 Turning to Point II, defendant contends his conviction should

be reversed because the judge should have instructed the jury that

 12 A-3999-14T1
S.D. made prior inconsistent statements regarding defendant's

abuse that were admissible as substantive evidence. Defendant

acknowledges that he did not request such instruction, but that

the judge's failure to do so was plain error, which had the clear

capacity to lead to an unjust result. In particular, defendant

cites to allegations in S.D.'s testimony - defendant threatened

to kill her and stuff her body in a barrel if she told anyone

about the sexual abuse, the third grade speaker who spoke to her

class, about sexual abuse, and the allegation that defendant told

her that he ate specific fruits to make his semen taste a certain

way – that was not included in her statement to Everingham.

Defendant contends that the judge erred in instructing the jury

that they only had to "'determine the credibility of the

witnesses', including considering 'whether the witness made any

inconsistent or contradictory statements.'" We find no merit in

this contention.

 We are mindful of some well-settled principles. A defendant

is entitled "an adequate instruction of the law." State v.

Pleasant, 313 N.J. Super. 325, 333 (App. Div. 1998) (citation

omitted), aff'd, 158 N.J. 149, 150 (1999). "Clear and correct

jury instructions are essential for a fair trial." State v.

Randolph, 441 N.J. Super. 533, 558 (2015) (quoting State v. Brown,

138 N.J. 481, 522 (1994)). "'[E]rroneous instructions on material

 13 A-3999-14T1
points are presumed to' possess the capacity to unfairly prejudice

the defendant." State v. Baum, 224 N.J. 147, 159 (2016) (quoting

State v. Bunch, 180 N.J. 534, 541-42 (2004)).

 Where, however, a "defendant did not object to the jury

instructions at trial, we must apply the plain error standard."

State v. Burns, 192 N.J. 312, 341 (2007) (citing R. 2:10-2; State

v. Torres, 183 N.J. 554, 564 (2005)). Regarding a jury charge,

the plain error analysis requires demonstration of "[l]egal

impropriety in the charge prejudicially affecting the substantial

rights of the defendant sufficiently grievous to justify notice

by the reviewing court and to convince the court that of itself

the error possessed a clear capacity to bring about an unjust

result." Ibid. (quoting State v. Jordan, 147 N.J. 409, 422

(1997)). An "error in a jury instruction that is 'crucial to the

jury's deliberations on the guilt of a criminal defendant' is a

'poor candidate[] for rehabilitation' under the plain error

theory." Ibid. (quoting Jordan, supra, 147 N.J. at 422).

Nevertheless, any such error is to be considered "in light of 'the

totality of the entire charge, not in isolation.'" Ibid. (quoting

State v. Chapland, 187 N.J. 275, 289 (2006)). Moreover, "any

alleged error also must be evaluated in light 'of the overall

strength of the State's case.'" Ibid. (citation omitted).

 14 A-3999-14T1
 Applying these principles, we are satisfied there was no

plain error due to the judge's decision not to charge the jury

that S.D.'s prior inconsistent statements regarding defendant's

abuse were admissible as substantive evidence. We have held that

“[a]n apparently inconsistent pretrial statement of a witness . .

. is not limited to . . . affecting the witness’s credibility at

trial. The rule is clear that such statements are admissible for

their substantive content.” State v. Ramos, 217 N.J. Super. 530,

538 (App. Div.), certif. denied, 108 N.J. 677 (1987). However,

when a witness’s prior testimony is not substantially different

from his or her trial testimony, a general credibility jury

instruction will not constitute plain error. See Ibid.; see also

State v. Turner, 310 N.J. Super. 423, 431 (App. Div. 1998).

 Here, there are no substantial differences in between S.D.'s

pretrial statement and her trial testimony assertions regarding

defendant's sexual abuse. In both situations, S.D. consistently

reflected her allegations concerning oral sex, digital

penetration, defendant’s toe fetish, and the distinguishing scar

on his penis. Moreover, she consistently alleged that defendant

regularly abused her throughout her youth until she ran away from

home at the age of sixteen. The fact that S.D. may have provided

certain allegations in her testimony that were not mentioned in

her pretrial statement did not constitute inconsistency, and did

 15 A-3999-14T1
not warrant the specific jury charge defendant now claims the

court should have given.

 Lastly, we address defendant's argument in Point III that the

judge made errors at sentencing. Defendant maintains his sentence

should be vacated because the judge improperly considered the

unproven charge of sexual abuse related to his son, which the

State dismissed prior to trial, and because the judge

insufficiently explained the application of aggravating factor

nine. We disagree.

 We begin by noting that review of a criminal sentence is

limited. A reviewing court must decide "whether there is a 'clear

showing of abuse of discretion.'" State v. Bolvito, 217 N.J. 221,

228 (2014) (quoting State v. Whitaker, 79 N.J. 503, 512 (1979)).

Under this standard, a criminal sentence must be affirmed unless:

"(1) the sentencing guidelines were violated; (2) the findings of

aggravating and mitigating factors were not 'based upon competent

credible evidence in the record;' or (3) 'the application of the

guidelines to the facts' of the case 'shock[s] the judicial

conscience.'" Ibid. (alteration in original) (citation omitted).

If a sentencing court properly identifies and balances the factors

and their existence is supported by sufficient credible evidence

in the record, this court will affirm the sentence. See State v.

 16 A-3999-14T1
Carey, 168 N.J. 413, 426-27 (2001); State v. Megargel, 143 N.J.

484, 493-94 (1996).

 We agree with defendant's contention that under State v.

Lawless, 214 N.J. 594, 609 (2013), "consideration of an

inappropriate aggravating factor violates the guidelines and thus

is grounds for vacating [a] sentence." (quoting State v. Pineda,

119 N.J. 621, 628 (1990); internal quotation omitted). However,

despite initially rejecting defendant's request that the dismissed

charge not be considered, the judge does not appear to have

considered that information when he imposed sentence. There is

no indication in the judge's detailed explanation of the

aggravating factors that he in fact considered the allegations

concerning the son. At most, the judge's initial comment was

harmless error.

 Our review of the record leads us to conclude the record

supports the aggravating factors the judge applied. This includes

application of aggravating factor nine, the need to deter defendant

and others from violating the law, given the seriousness and the

extended time of the sexual abuse against S.D. Thus, the judge

did not abuse his discretion, and we discern no basis to vacate

defendant's sentence.

 Affirmed.

 17 A-3999-14T1