**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2563-16T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JAMAL H. ROBINSON,

     Defendant-Appellant.

_____

Submitted December 18, 2018 – Decided May 1, 2019

Before Judges Rothstadt and Natali.

On appeal from Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 15-08-1002.

Joseph E. Krakora, Public Defender, attorney for appellant (David Anthony Gies, Designated Counsel, on the briefs).

Dennis Calo, Acting Bergen County Prosecutor, attorney for respondent (Tom Dominic Osadnik, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Jamal H. Robinson appeals from the Law Division's judgment of conviction that it entered after a jury found him guilty of conspiracy to distribute an imitation controlled dangerous substance, N.J.S.A. 2C:35-11 and N.J.S.A. 2C:5-2, and the trial court sentenced him to a four-and-a-half-year term of imprisonment. His conviction arose from an undercover narcotics investigation that identified defendant as the person with whom an undercover police officer arranged a purchase of what was supposed to be heroin and as the driver of the vehicle involved in the sale.

On appeal, defendant challenges his conviction and argues that the trial court erred by admitting Rule 404(b) evidence of other crimes or wrongful conduct without properly instructing the jury. He also contends that the court failed to "recall the jury" after it learned that members of the jury might have been exposed to a press release that was prejudicial to defendant. As to his sentence, defendant argues that the trial court failed to properly consider certain mitigating factors. We affirm.

Defendant's conviction was the result of a 2014 ongoing investigation by the Bergen County Prosecutor's Office Narcotics Task Force (NTF). In November 2014, a member of the NTF, Detective Damian Pope, learned from a confidential informant (CI) that an individual named "Mally" was selling heroin.

Pope had the CI arrange for him an undercover purchase of heroin from Mally, which transpired under surveillance on November 24, 2014. From that transaction, Pope obtained the license plate number of Mally's vehicle, which Pope used to identify Mally as defendant.

During the week of December 8, 2014, Pope spoke to defendant on two occasions and arranged another purchase of heroin from him. Pope asked defendant if he could purchase twenty bricks of heroin and they agreed to meet at a diner on December 10, 2014 to complete the transaction.

Pope drove to the diner with the CI. When they arrived, before he went into the diner, Pope told the CI to call defendant to let him know they were there. Pope entered the diner and seated himself next to a window, leaving the CI in his car to wait for defendant. Pope watched as defendant drove up in his car and parked next to Pope's vehicle. The CI got out of Pope's car and into defendant's vehicle. Defendant then drove the CI to the front of the diner and stopped to let out the CI and another individual called "Perp," whose was identified as Damar Palmer.[1] Palmer and the CI went inside, leaving defendant behind in his car. After the CI introduced Palmer and Pope, Palmer reached into his sweatshirt and first pulled out a brown box containing empty glassine envelopes used to

---

[1] Palmer was named as a codefendant in this matter.

distribute heroin before he removed a bag containing a powdery substance that he said was from Mally.

At that point, Pope signaled other officers who were conducting surveillance and an arrest team arrived to apprehend defendant and Palmer. The bag containing the powdery substance was sent for testing that revealed the purported heroin was fake. On August 6, 2015, a Grand Jury returned an indictment, charging defendant with one count with third-degree conspiracy to distribute an imitation controlled dangerous substance, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:35-11.

At defendant's ensuing trial, the State called Pope and other officers who testified about the events surrounding the investigation and leading to defendant's arrest. The State also presented testimony from other officers who testified about recordings of defendant's phone calls that he made while in jail in which he admitted that the substance given to Pope was baby food, not heroin, and in which he identified himself as Mally. The State's final witness was a detective who was offered as a law enforcement expert in illicit drug distribution. After the State rested, defendant made a motion under Rule 3:18-1 for a judgment of acquittal, which the court denied.

Defendant did not testify but called Palmer as a witness. Palmer testified that he and defendant were indicted together and that he pled guilty to conspiracy to distribute imitation controlled dangerous substances. He explained that he and the CI were the individuals who worked together to sell heroin to Pope, although the CI was unaware that the actual product was an imitation. According to Palmer, defendant had been paid only to drive to the diner without any knowledge about the transaction. Palmer stated that he told the officers that defendant was not involved in the transaction.

After considering the evidence, the jury returned a unanimous verdict, finding defendant guilty of the one charge made against him. As noted, the trial court later sentenced defendant and this appeal followed.

On appeal, defendant specifically argues the following:

POINT I

THE TRIAL COURT ERRED WHERE IT DID NOT INSTRUCT THE JURY ON THE PROPER MANNER IN WHICH TO USE THE OTHER CRIME EVIDENCE.

POINT II

THE TRIAL COURT ERRED WHERE IT DENIED DEFENDANT'S MOTION TO RECALL THE JURY AFTER BEING DISCHARGED IN LIGHT OF A PRESS RELEASE WHICH WAS DISTRIBUTED DURING DELIBERATIONS AND WHICH

CONTAINED INFORMATION THAT DEFENDANT WAS CHARGED IN AN UNRELATED MATTER WITH TWO ATTEMPTED MURDERS.

POINT III

THE TRIAL COURT ERRED IN SENTENCING DEFENDANT WHERE IT FOUND THAT MITIGATING FACTORS (1) AND (2) WERE NOT APPLICABLE.

We are not persuaded by any of these arguments.

We turn first to defendant's contention in Point I concerning Rule 404(b) evidence. According to defendant, the trial court abused its discretion by denying his motion for a mistrial that was raised after Pope mentioned the November 2014 investigation that led to the December 2014 encounter. Defendant first raised the issue with the trial court in one of his pretrial motions. Specifically, he sought to bar evidence of the November 24, 2014 conversation between Pope, the CI, and defendant discussing a potential drug sale and subsequent meeting. The State initially agreed that any reference to the November interactions would be limited to placing into context the timeline of defendant's arrest, but later clarified it would ask Pope if he had known defendant prior to the December telephone contact in order to explain why he called in the first place. The trial court ruled that although it would not allow testimony about the November 2014 meeting between Pope and defendant, it

would not "restrict the State . . . from having the officer identify or say that he spoke with Mally that was later identified as the defendant . . . ."

At trial, Pope never testified about his November 2014 conversations with defendant, their meeting, or the transaction. He testified to the following, without any objection being made by defendant:

> [Prosecutor]: All right. Now . . . did you become aware of a person by the name of Jamal Robinson?
>
> [Pope]: Eventually I did, but when I first received the information it had nothing to do with -- during the month of November I received information by someone about someone by the name of Mally. As I furthered my investigation, I found out Mally is Jamal Robinson. So initially I didn't get information about Jamal Robinson.
>
>             . . . .
>
> [Prosecutor]: Now, you stated that you became involved . . . in an investigation around November 2014 with a person by the name of Mally. You also said that you . . . came to learn that his name was different. Can you just explain that process?
>
> [Pope]: Oh. Sometimes we get what is called street names. A lot of people have different street names in the drug world. So what we would do, we'd conduct an investigation. In this case I was able to identify Mr. Robinson's vehicle . . . . [a]nd I was able to run . . . the plate and I found that that, indeed, was Jamal Robinson.
>
> [Prosecutor]: Now, when you became involved in this investigation, what was the goal of the investigation?

A-2563-16T4

> [Pope]: Well, the goal of the investigation was to determine if Mr. Robinson was involved in the sales of heroin in Bergen County.

After explaining various aspects of his investigation, Pope was then asked to explain "[w]hat [he] did . . . to investigate [defendant] and the sale of heroin." In his response, Pope did not refer to his November 24, 2014 encounter with defendant.

Afterward, during a break, defendant moved for a mistrial. He argued that Pope's testimony violated the prosecutor's agreement that "no reference would be brought up about anything that took place before December . . . unless [defense counsel] opened the door." He expressed concern that as a result of Pope "testify[ing] there was an ongoing investigation . . . the jury[ would] infer from that there was an ongoing investigation, which was not closed due to criminal activity on the part of [defendant] . . . ."

In response to the motion, the trial court noted that defendant did not object in a timely manner so it could have cured the issue with an instruction to the jury, if necessary.[2] The court also reminded the parties that there were discussions during the pretrial conference that there would be a statement about

---

[2] Defense counsel explained that he did not object because he did not want "the jury . . . [to] overhear what [he] had to say" at sidebar and was not aware that the court would, if necessary, excuse the jury for argument on an objection.

an ongoing investigation limited to giving context to the December transaction, which would not mention specific bad acts. The court concluded "that there[ was not] any violation of [its] order prohibiting or preventing, at least in the State's case in chief or any evidence of prior bad acts to come in."

Prior to his sentencing, defendant raised the issue again as part of his motion for a new trial. During argument on the motion, counsel conceded that Pope's comments about a prior criminal investigation did not "amount to evidence, per se, of prior criminal conduct or prior bad acts of . . . defendant . . . ." However, according to counsel, the testimony violated the court's pretrial ruling "that no reference could be made to any criminal investigation" and it allowed the jurors to believe that defendant was involved in earlier "criminal activity." The trial court disagreed with counsel and denied the motion because it concluded that "no [Rule 404(b)] evidence . . . was allowed in."

On appeal, defendant argues that Pope's testimony implied that he knew defendant was involved in the sale of heroin when he contacted him in December 2014. He contends that allowing the testimony was in violation of the pretrial order and inadmissible under Rule 404(b). He specifically argues that prongs one and four of the test established in State v. Cofield, 127 N.J. 328 (1992) are implicated. Under prong one, he contends his identity was not a material issue

as he never disputed that he was in his car at the diner or that he was known as Mally. Under prong four, defendant argues Pope's knowledge that he previously acted in a way which led Pope to further investigate defendant was "inherently inflammatory" especially because his identity was not material.[3] Defendant further argues that even though he did not object to Pope's testimony, the trial court should have delivered a limiting instruction stating that the challenged testimony could not be used by the jury to establish whether defendant was part of the conspiracy to sell imitation heroin in December 2014. We find no merit to these contentions.

We "will not disturb a trial court's ruling on a motion for a mistrial, absent an abuse of discretion that results in a manifest injustice." State v. Smith, 224 N.J. 36, 47 (2016) (quoting State v. Jackson, 211 N.J. 394, 407 (2012)). "Whether an event at trial justifies a mistrial is a decision 'entrusted to the sound discretion of the trial court.'" Ibid. (quoting State v. Harvey, 151 N.J. 117, 205 (1997)).

---

[3] He further contends that the issue was whether he was part of the conspiracy that began on December 8, 2014. He adds that neither his presence in the parking lot alone nor the December 8, 2014 telephone call are sufficient to show that he conspired to sell imitation heroin to the undercover agent.

We conclude that the trial court did not abuse its discretion because Pope's challenged testimony was neither evidence of a prior crime or bad act under Rule 404(b), nor a violation of the trial court's pretrial limitations on his testimony.

Like any decision about the admissibility of evidence, the decision to admit or exclude Rule 404(b) evidence is left to the trial court's discretion and will be reversed "[o]nly where there is a clear error of judgment." State v. Green, 236 N.J. 71, 80-81 (2018) (alteration in original) (quoting State v. Rose, 206 N.J. 141, 157-58 (2011)). Where, as here, it is argued that the trial court "failed to properly apply Rule 404(b) to the evidence at trial," we may "'engage in [our] own "plenary review" to determine . . . admissibility,'" thereby applying a de novo review to determine if the trial "court should have, but did not perform a Colfield analysis." Id. at 81 (citation omitted).

Under Rule 404(b), "evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that such person acted in conformity therewith." N.J.R.E. 404(b). It may be admissible, however, if evidence is offered to prove "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, . . . [if] relevant to a material issue in dispute." Ibid. If such evidence is being offered

under one of the exceptions to the general prohibition, the court must apply the four part analysis stated in Colfield in order to determine admissibility. See State v. Garrison, 228 N.J. 182, 194 (2017). If the trial court determines that the evidence is admissible, it must sanitize the information and deliver a carefully crafted limiting instruction to the jury to reduce any inherent prejudice in the other-crimes evidence. See Green, 236 N.J. at 84.

Pope's testimony about how his earlier investigation led to his discovery that Mally was defendant did not constitute inadmissible other-crimes evidence. See N.J.R.E. 404(b). His testimony was necessary to explain why in December 2014, he contacted defendant as compared to anyone else to attempt to set up a drug purchase. The officer did not state or imply that defendant was a criminal or that he had a criminal past or that he was inlvoved in any earlier bad acts. As such, it did not constitute Rule 404(b) evidence. See State v. Love, 245 N.J. Super. 195, 197-98 (App. Div. 1991) (finding no evidence of prior criminal conduct being offered from a police investigator's statement that "'I believe there was prior contact I had with [the defendant]. . . . I had interviewed him during a homicide investigation'"); State v. Ramos, 217 N.J. Super. 530, 537-38 (App. Div. 1987) (finding an officer's testimony that he was familiar with the defendant did not "prejudice the defendant by implying that he had committed

12

previous criminal acts or was otherwise disposed toward criminal behavior"). Moreover, as already noted above, defendant essentially conceded in his counsel's oral argument to the trial court that the challenged testimony was not Rule 404(b) evidence.

We also agree that Pope's challenged testimony did not violate the trial court's pretrial order because it was limited to explaining why he made the December call to defendant without any reference to the November events. We similarly find Pope's brief comment about November 2014 harmless and reject any suggestion that his testimony supported an inference by jurors that defendant had been involved in prior criminal activity or was denied a fair trial.

Next, we address defendant's argument in Point II about the trial court's failure to recall the jury after it had been discharged. According to defendant, the county prosecutor's office issued a press release that mentioned defendant during the time the jury was deliberating which warranted the jury being recalled to make sure none of its members had seen the release during their deliberations. We disagree.

The record indicates that the trial court completed its instructions to the jury on October 26, 2016 at approximately 4:00 p.m. Before the jury was

13

discharged for the day, it sent out a series of questions. The court decided to address the questions the next day and discharged the jury for the night.

The next morning, the court and counsel conferred as to the jury's questions from the day before, brought the jury into the courtroom to address the questions, and then directed the jury to resume its deliberations. At approximately 2:45 p.m., the jury notified the trial court that it could not come to a unanimous decision. In response, the court brought the jurors into the courtroom, inquired of them about their inability to continue to deliberate, and then reinstructed and directed them to continue their deliberations.

Just prior to the jury informing the court that it could not reach a verdict, and unbeknownst to the parties or the court, the prosecutor's office issued a press release that discussed an initiative targeting gun violence that specifically mentioned defendant being charged with two counts of attempted murder. The information was simultaneously posted on the internet. Approximately one hour after the jury resumed deliberations, it returned its verdict, unanimously finding defendant guilty as charged in the indictment.

Months after the verdict, as part of his post-verdict motions, defendant requested that the jurors be brought back to court. In his argument, defense counsel acknowledged that the trial court repeatedly instructed jurors not to do

A-2563-16T4

any independent research about defendant or the case. He also conceded that he did not have any evidence that any of the jurors saw the press release. However, he believed that,

> at the very least, . . . it raise[d] a suspicion and perhaps even amount[ed] to a basis . . . to have the [c]ourt conduct at least inquiries of the jurors as to whether during their deliberations any of the jurors looked at their cell phones and were made aware of this press release which was broadcast.

In response, the trial court noted its repeated instructions to the jurors against doing any type of outside research and concluded that defendant's arguments amounted to "speculation" as there was not "even a scintilla of evidence that they were exposed to the publication."

On appeal, defendant states that the question before us is "whether the record shows a realistic possibility [that] the press release reached one or more of the jurors." He notes that the press release did not come from a news outlet and was released after the jury initially informed the judge that it was unable to return a verdict. He argues that the press release contained inherently prejudicial information and infers that, because the jury was neither sequestered nor had cell phones removed from members' possession, one or more of the jurors read the press release before the jury returned its verdict. Citing to State v. Bey, 112 N.J. 45, 86 (1988), defendant argues that there was a "realistic possibility the

15

press release reached one or more of the jurors."  We are not persuaded by defendant's argument.

Because "[u]ltimately the trial court is in the best position to determine whether the jury has been tainted," we apply an abuse of discretion standard of review to challenges to the integrity of jury deliberations.  State v. R.D., 169 N.J. 551, 559 (2001).  The application of that standard "respects the trial court's unique perspective" and accords deference to the trial court "in exercising control over matters pertaining to the jury."  Id. at 559-60.  Where there is "no suggestion of outside influence, racial prejudice, media exposure, or any of the other sorts of irregular influences sufficient to create a potential for prejudice," a court has not abused its discretion in denying a request to question a juror or denying a motion for a new trial.  State v. Scherzer, 301 N.J. Super. 363, 495-96 (App. Div. 1997).

"New Jersey courts have long recognized the distinction between allegations of juror misconduct arising at trial and those first alleged after entry of a verdict, and the dangers to our system of justice posed by interrogating jurors about their secret deliberations for the purpose of invalidating a verdict."  State v. Griffin, 449 N.J. Super. 13, 26 (App. Div. 2017) (citing State v. Harris, 181 N.J. 391, 503 (2004)).  "Calling back a jury for questioning following

discharge is an 'extraordinary procedure,' to be utilized 'only upon a strong showing that a litigant may have been harmed by jury misconduct.'" Id. at 19 (quoting Davis v. Husain, 220 N.J. 270, 274 (2014)). "[J]urors can be questioned after trial only in 'extraordinary' circumstances 'when there is a strong representation that a defendant may have been harmed by juror misconduct.'" State v. Bisaccia, 319 N.J. Super. 1, 18 (App. Div. 1999) (quoting State v. Harris, 156 N.J. 122, 154 (1998)).

Applying these guiding principles we discern no abuse of the court's discretion by not recalling the jurors. Contrary to defendant's argument, a possibility that the jurors read the press release is not sufficient proof to warrant bringing jurors back to court post-verdict. There was no evidence that any of the jurors failed to follow the trial court's instructions or even knew about the press release and there was no evidence that otherwise established a "strong showing" that an injustice occurred due to any jurors being influence by anything other than the evidence in the case. See id. at 18-19.

The Court's opinion in Bey does not alter our decision because that case addressed claims about juror exposure to publicity adverse to a defendant during his trial. Under those circumstances, the Court directed that if a trial court was satisfied that the subject information was prejudicial to a defendant, and there

was "a realistic possibility that such information may have reached one or more of the jurors," the trial court should question the jurors about whether they were exposed and how it impacted their ability to proceed as jurors. Bey, 112 N.J. at 86-87. The Court specifically held "that where a timely, properly supported midtrial motion to poll the jury concerning prejudicial publicity is refused, and there is a realistic possibility that information with the capacity to prejudice the defendant may have reached one or more members of the jury, the defendant must be given a new trial." Id. at 91.

As already noted, defendant's case was over for months at the time defendant raised his claim and he did so without any evidence of juror exposure to the press release or that their verdict was the result of any outside influence. The timing of the jury's verdict alone as argued by defendant does not satisfy the requirement for a "strong showing" of harm.

Finally, we consider defendant's contentions in Point III about his sentence. The trial court found aggravating factors three, the risk that defendant will commit another offense of which he has been convicted; six, the extent of defendant's prior criminal record and the seriousness of the offenses of which he has been convicted; and nine, the need to deter defendant and others from violating the law. N.J.S.A. 2C:44-1(a)(3), (6), (9). The court found no

18

mitigating factors, except mitigating factor eleven, N.J.S.A. 2C:44-1(b)(11), "imprisonment of . . . defendant would entail excessive hardship to himself or his dependents," because defendant had three children and a fiancé who relied on him and would suffer extreme hardship if he spent significant time in prison. In rejecting other mitigating factors, the trial court placed its reasons on the record explaining why they were not applicable.

Defendant argues that, given the circumstances regarding the conspiracy, the trial court should have found mitigating factor one, that defendant's conduct did not cause or threaten serious harm, N.J.S.A. 2C:44-1(b)(1), and mitigating factor two, that defendant "did not contemplate that his conduct would case or threaten serious harm," N.J.S.A. 2C:44-1(b)(2). Defendant argues that a crime involving a conspiracy to distribute an imitation controlled dangerous substance is not substantially similar to a crime involving possession with intent to distribute an actual controlled dangerous substance. He adds that a trial court cannot refuse to find mitigating factor one solely because of a possessory controlled dangerous substance offense. He contends that, at the time of his arrest, he did not flee, that no weapons were seized at the scene, and that he was not in possession of the imitation drug or charged with possession. For these

reasons, he argues that his sentence should be reconsidered. We find these contentions to be without merit.

We employ a deferential standard when reviewing a trial court's sentencing decision. State v. Grate, 220 N.J. 317, 337 (2015); State v. Fuentes, 217 N.J. 57, 70 (2014). We must affirm a sentence unless (1) the trial court failed to follow the sentencing guidelines; (2) the court's findings of aggravating and mitigating factors were not based on competent and credible evidence in the record; or (3) "'the [court's] application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience.'" Fuentes, 217 N.J. at 70 (second alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

We are convinced that the trial judge adhered to the sentencing guidelines and the record supports the findings of aggravating factors and the application of the one mitigating factor. The sentence imposed is well within the court's sentencing discretion and does not shock our judicial conscience.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2563-16T4