NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3491-15T2

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

KALIL GRIFFIN,

     Defendant-Respondent.

APPROVED FOR PUBLICATION

February 27, 2017

APPELLATE DIVISION

Argued October 6, 2016 - Decided February 27, 2017

Before Judges Alvarez, Accurso and Higbee.[1]

On appeal from Superior Court of New Jersey,
Law Division, Monmouth County, Indictment
No. 12-05-0857.

Mary R. Juliano, Assistant Prosecutor,
argued the cause for appellant (Christopher
J. Gramiccioni, Monmouth County Prosecutor,
attorney; Ms. Juliano, of counsel and on the
brief).

James K. Smith, Jr., Assistant Deputy Public
Defender, argued the cause for respondent
(Joseph E. Krakora, Public Defender,
attorney; Mr. Smith, of counsel and on the
brief).

---

[1] Hon. Carol Higbee participated in the panel that decided this appeal.  The opinion was approved for filing prior to Judge Higbee's death on January 3, 2017.

The opinion of the court was delivered by

ACCURSO, J.A.D.

Hours after the jury convicted defendant Kalil Griffin of felony murder, N.J.S.A. 2C:11-3a(3); first-degree robbery, N.J.S.A. 2C:15-1; second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5b; and second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4a, defense counsel received a call from one of the jury alternates. The alternate claimed that during the trial, several jurors routinely met to discuss the case notwithstanding the judge's instructions that they not do so. She claimed she heard the juror who organized these discussions say he was going to make sure defendant did not "get off" like his co-defendant.

The jurors were aware the co-defendant had been acquitted of the same charges in an earlier trial. Not only had they been advised of that fact in opening statements, the co-defendant testified on behalf of the State that he had been tried and acquitted. The alternate indicated to defense counsel that the jurors participating in the discussions had decided to vote guilty before they retired for deliberations. She claimed two other jurors also heard these discussions, prompting one of them to ask that she be allowed to serve as an alternate and not participate in deliberations.

Defense counsel recounted his conversation with the caller in a certification filed in support of his motion for a "hearing on juror misconduct" filed several days after the verdict.[2] The

---

[2] Defense counsel's certification stated in pertinent part:

> 1.  I represent the defendant in the above referenced matter.
>
> 2.  On October 22, 2015[,] Kalil Griffin was convicted by jury of felony murder . . . .
>
> 3.  Shortly after the verdict, I received a phone call from an alternate juror named [the alternate].
>
> 4.  [The alternate] indicated that during the testimonial phase of the trial[,] several jurors, apparently organized by Juror #2, . . . , would meet downstairs and routinely discuss the case despite the [c]ourt's admonitions.
>
> 5.  [Juror #2] was heard to say that he was going to make sure this defendant (Griffin) would not "get off" like the codefendant.
>
> 6.  [The alternate] indicated that [Juror #2's] organized group of jurors decided to vote guilty even before summations were heard.
>
> 7.  This prompted Juror #3, . . . , to request to be an alternate.
>
> 8.  Also, . . . , another alternate juror[,] heard these improper conversations between [Juror #2] and other jurors that took place prior to deliberation.
>
> 9.  Coincidentally, or perhaps not so, another juror called the [c]ourt on the day

(continued)

trial judge who presided over the four-week trial unfortunately retired without hearing the motion. Another judge heard the motion almost five months after entry of the verdict. At the conclusion of argument, that judge determined, based on the "irregularities alleged," to interview the caller and the other alternate who allegedly heard the improper conversations, on the record with counsel present.[3]

We granted the State's emergent application for leave to file an interlocutory appeal from the ensuing order. Applying a

---

(continued)
> of deliberations to say she had car trouble and could not make it to court.
>
> 10. For these reasons, it is urged that this [c]ourt conduct a hearing on juror misconduct to determine if certain jurors pressed for a guilty verdict "prior to deliberations[.]" See State v. McLaughlin, 310 N.J. Super. 242 (App. Div. 1998) and State v. Scherzer, 301 N.J. Super. 363 (App. Div. 1997).
>
> 11. I did not solicit any of the above allegations from [the alternate], nor have I spoken to any jurors named in this certification.

[3] The judge initially indicated he would also interview the deliberating juror who had asked to serve as an alternate, "not as to her deliberations but why she" asked the trial judge to allow her to serve as an alternate. The judge apparently reconsidered that decision as his order limits the interviews to the two alternate jurors.

de novo standard of review,[4] see Nicholas v. Mynster, 213 N.J. 463, 478 (2013), we now reverse, finding no good cause for the court to interview these two alternate jurors post-verdict. See R. 1:16-1; State v. LaFera, 42 N.J. 97, 105-07 (1964).

As the Supreme Court has recently made abundantly clear, "under no circumstances may post-verdict discussions occur between the court and discharged jurors, unless those discussions are part of a hearing ordered on good cause shown pursuant to Rule 1:16-1."[5] Davis v. Husain, 220 N.J. 270, 274 (2014). "Calling back a jury for questioning following discharge is an 'extraordinary procedure,' to be utilized 'only

---

[4] The issue we review is whether there was good cause to permit the post-trial interrogation of jurors pursuant to Rule 1:16-1 based on defense counsel's certification relating the allegations of an alternate juror. The question presented is one of law on undisputed facts making de novo review appropriate. We thus reject defendant's view that we should be applying an abuse of discretion standard applicable to a judge's mid-trial determination of the appropriate course of action upon a showing of premature deliberations by jurors. See State v. McLaughlin, 310 N.J. Super. 242, 256-57 (App. Div.), certif. denied, 156 N.J. 381 (1998).

[5] Rule 1:16-1 provides:

> Except by leave of court granted on good cause shown, no attorney or party shall directly, or through any investigator or other person acting for the attorney, interview, examine, or question any grand or petit juror with respect to any matter relating to the case.

upon a strong showing that a litigant may have been harmed by jury misconduct.'" Id. at 279 (quoting State v. Athorn, 46 N.J. 247, 250, cert. denied, 384 U.S. 962, 86 S. Ct. 1589, 16 L. Ed. 2d 674 (1966)).

Although the Court's reminder is recent, the reasons for not permitting inquiry into a jury's secret deliberations for the purpose of invalidating a verdict were established many years ago.

> If verdicts could be easily set aside as a result of an investigation into secret jury deliberations, disappointed litigants would be encouraged to tamper with jurors, to harass them and to employ fraudulent practices in an effort to induce them to repudiate their decisions. Moreover, an open invitation would be extended to any disgruntled juror who might choose to destroy a verdict to which he had previously assented.
>
> [Athorn, supra, 46 N.J. at 250.]

Clearly, jury secrecy is essential to protect the deliberative process itself. Id. at 251. "A jury deliberates in secrecy to encourage each juror to state his thoughts, good and bad, so that they may be talked out." LaFera, supra, 42 N.J. at 106. "Freedom of debate might be stifled and independence of thought checked if jurors were made to feel that their arguments and ballots were to be freely published to the

world."  Clark v. United States, 289 U.S. 1, 13, 53 S. Ct. 465, 469, 77 L. Ed. 993, 999 (1933).

The United States Supreme Court described the tension facing a court presented with the post-trial affidavit of a juror claiming misconduct of himself or other members of the jury as forcing a choice "between redressing the injury of the private litigant and inflicting the public injury which would result if jurors were permitted to testify as to what had happened in the jury room."  McDonald v. Pless, 238 U.S. 264, 267, 35 S. Ct. 783, 784, 59 L. Ed. 1300, 1302 (1915).

Although acknowledging "the argument in favor of receiving such evidence is not only very strong but unanswerable — when looked at solely from the standpoint of the private party who has been wronged by such misconduct," the Court found permitting such evidence "'would open the door to the most pernicious arts and tampering with jurors.  The practice would be replete with dangerous consequences.  It would lead to the grossest fraud and abuse and no verdict would be safe.'"  Id. at 268, 35 S. Ct. at 784-85, 59 L. Ed. at 1302 (quoting Cluggage v. Swan, 4 Binn. 150, 158 (Pa. 1811); Straker v. Graham, 4 M. & W. 721, 725-26, 150 Eng. Rep. 1612, 1613-14 (1839)) (internal quotation marks omitted).

The Court explained the rule, which is now almost universally applied, against receiving such evidence from jurors is ultimately "based upon controlling considerations of a public policy which in these cases chooses the lesser of two evils." Id. at 267, 35 S. Ct. at 784, 59 L. Ed. at 1302; see also Tanner v. United States, 483 U.S. 107, 120, 107 S. Ct. 2739, 2747, 97 L. Ed. 2d 90, 106 (1987) ("There is little doubt that post-verdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior.  It is not at all clear, however, that the jury system could survive such efforts to perfect it.").

"The essence of R. 1:16-1 is recognition of the need to 'insure free debate in cases to come,' and to 'prevent the unsettling of verdicts after they have been recorded.'"  State v. Loftin, 287 N.J. Super. 76, 109 (App. Div.) (internal quotations omitted), certif. denied, 144 N.J. 175 (1996).  The rule's prohibitions, however, are not absolute, because "cases do arise where 'the plainest principles of justice' demand that a new trial should be directed upon a proper showing." Athorn, supra, 46 N.J. at 251 (quoting Mattox v. United States, 146 U.S. 140, 148, 13 S. Ct. 50, 52, 36 L. Ed. 917, 920 (1892)).

The Court has recognized two exceptions to the general rule against disturbing a jury's verdict because of what a juror may have said during deliberations, both of which would constitute "good cause" under Rule 1:16-1 to call back a discharged juror for questioning: first, where a juror "informs or misinforms his or her colleagues in the jury room about the facts of the case based on his personal knowledge of facts not in evidence" and second, where racial or religious bigotry is manifest in deliberations. State v. Koedatich, 112 N.J. 225, 288 (1988), cert. denied, 488 U.S. 1017, 109 S. Ct. 813, 102 L. Ed. 2d 803 (1989).

The strictness with which these exceptions are applied is best demonstrated by the facts of Athorn. Athorn was a Newark police officer convicted by a jury of extortion and misconduct in office. 46 N.J. at 249. About a month after the verdict, the prosecutor advised the court he had been contacted by a juror in the case claiming the verdict had been improperly rendered. Ibid. The trial judge summoned the juror to appear in open court in the presence of the prosecutor and defense counsel to hear the juror's allegations. Ibid.

The juror asserted several improprieties. He claimed that some jurors asserted "cops take bribes," citing newspapers as a source, that other jurors harangued him when he refused to vote

guilty, and that he was tricked into finally voting to convict by a fellow juror "who seemed to agree with him that the defendant was innocent but who then cast his vote for guilty." Id. at 249-50. The juror also claimed to have misunderstood the trial court's instructions regarding the necessity of a unanimous verdict. Id. at 250. He claimed he had never heard of a hung jury and that had he realized the possibility, he would never have changed his vote to guilty. Ibid. Based on the juror's statements, the trial judge determined to interview the remaining jurors about the allegations and issued an order to that effect. Ibid.

As in this case, we stayed the order in Athorn and granted the prosecution's motion for leave to appeal. Ibid. While the case was pending in this court, the Supreme Court certified the case for direct review and reversed. Id. at 249-50.

The Court concluded the juror's allegations, "even if they were to be substantiated by the testimony of the other jurors, would [not] be a sufficient basis on which the conviction could be set aside," and thus the order recalling the jurors had to be reversed. Id. at 250. Because nothing in the juror's testimony "suggest[ed] that a juror had expressed personal knowledge of any facts concerning the defendant which were not adduced in evidence," and the statement that "cops take bribes," could not

be read as any "manifestations of bias against the defendant because he was a police officer," the Court found "no reason for departing from the general rule" against inquiring into jury deliberations.  Id. at 252.

Here, as in Athorn, because the alternate's allegations as set forth in defense counsel's certification, even if substantiated, would not support setting aside the conviction, the trial court erred in ordering the discharged jurors back for questioning.  There is nothing in defense counsel's certification recounting his conversation with the alternate to suggest that any juror expressed personal knowledge of facts about defendant or his co-defendant's acquittal not adduced in evidence.  Neither did the alternate claim, or even suggest, that juror No. 2's comment "that he was going to make sure this defendant (Griffin) would not 'get off' like the codefendant," had any racial overtone.  Although defense counsel advised the judge hearing the motion that the alternate is African-American, as is defendant, and that the remainder of the jurors were white, we can draw nothing from those facts, and certainly not that racial bigotry was manifest in the jury's deliberations. Defendant has thus not presented any proof of actual bias infecting the jury's deliberations.

A-3491-15T2

Defendant argues on appeal that evidence of outside influence on the jury and racial or religious animus are not the only exceptions permitting inquiry into jury deliberations. He contends the Court has also set aside a jury verdict when jurors expressed an intent to vote guilty before hearing all the evidence, and emphasizes the allegations here relate to juror misconduct occurring prior to deliberations. Finally, he notes the judge's order, limited as it is to calling back only non-deliberating jurors, does not infringe the secrecy of deliberations and should be upheld for that reason as well. We reject those arguments.

The case on which defendant relies in asserting that a juror's expressed intention to vote guilty before hearing all the evidence provides "good cause" under Rule 1:16-1 to question jurors about misconduct is State v. Loftin, 191 N.J. 172, 196 (2007). Loftin, however, a capital case in which a non-deliberating juror made racially freighted comments to co-workers during the guilt-phase of the defendant's trial, is not a case arising under Rule 1:16-1.[6] Id. at 179, 185.

---

[6] Although Loftin's post-conviction relief counsel made an application for the trial court to interview the guilt-phase jurors pursuant to Rule 1:16-1, the request was not based on information received from a juror post-verdict but on the trial court's failure to immediately remove the biased juror at trial and voir dire the remaining jurors regarding his comments.
(continued)

In Loftin, the court was advised in the course of the trial that a white juror told two African-American co-workers he was going to the hardware store to buy a strong rope to hang the defendant, an African-American man charged with murdering a white man. Id. at 179, 183-84. Accepting the juror's representation that he had not prejudged the defendant's guilt, the trial judge declined to remove him from the jury. Id. at 179. The juror was permitted to sit with his fellow jurors throughout the guilt-phase trial, ultimately serving as an alternate. Ibid.

Loftin was convicted and sentenced to death. Ibid. The Court affirmed the conviction and sentence on direct appeal, State v. Loftin, 146 N.J. 295, 318 (1996) (Loftin I), and upheld Loftin's sentence on proportionality review, State v. Loftin, 157 N.J. 253, 266 (Loftin II), cert. denied, 528 U.S. 897, 120 S. Ct. 229, 145 L. Ed. 2d 193 (1999).

On appeal from the denial of Loftin's petition for post-conviction relief, however, the Court vacated Loftin's conviction and death sentence and remanded for a new trial,

_____

(continued)
Loftin, supra, 191 N.J. at 199. The precise holding of the case is "that the deficient performances of both trial and appellate counsel [in failing to adequately address the juror's bias and its effect on the panel's impartiality] denied defendant the assistance of reasonably competent counsel guaranteed to him under Article I, Paragraph 10 of our State Constitution." Ibid.

finding "no room in a capital trial for a juror who expresses a preconceived opinion of a defendant's guilt," made "[e]ven more alarming . . . when the juror's remarks prejudging guilt also suggest racial bias." Loftin, supra, 191 N.J. at 179-80. The Court found the trial judge erred in not removing the juror from the jury panel as soon as the court confirmed he made the statement: "'I'm going to the hardware store to get me a good rope so when we hang [defendant], it won't break,'" and in failing "to ensure that he did not infect the impartiality of the entire panel." Id. at 191-92.

We think Loftin clearly distinguishable from the situation that confronted the trial court here. Leaving aside that Loftin was a capital case "in which heightened standards of procedural fairness are applied," the misconduct of the juror there was brought to the court's attention mid-trial. Id. at 192. A trial judge's obligations vary significantly depending on when the allegation of juror misconduct is made.

In order to protect a criminal defendant's Sixth Amendment right to trial by an impartial jury, a judge faced with an allegation of juror misconduct before the verdict "must act swiftly to overcome any potential bias and to expose factors impinging on the juror's impartiality." State v. R.D., 169 N.J.

A-3491-15T2

551, 558 (2001); see also State v. Bisaccia, 319 N.J. Super. 1, 14 (App. Div. 1999).

> The court is obliged to interrogate the juror, in the presence of counsel, to determine if there is a taint; if so, the inquiry must expand to determine whether any other jurors have been tainted thereby. The trial court must then determine whether the trial may proceed after excusing the tainted juror or jurors, or whether a mistrial is necessary.
>
> [R.D., supra, 169 N.J. at 558.]

In contrast, a trial judge presented with a complaint of juror misconduct post-verdict may invoke the "extraordinary procedure" of interrogating jurors "only upon a strong showing that a litigant may have been harmed by jury misconduct." Athorn, supra, 46 N.J. at 250. The distinction, of course, being the entry of the verdict. The "strong policy reasons" of preventing disappointed litigants from tampering with jurors and disgruntled jurors from destroying a verdict have caused courts, with defined exceptions, to refuse "'to accept from jurors, for the purpose of impeaching a verdict, any evidence of the discussion which they may have had among themselves while considering their verdict.'" Koedatich, supra, 112 N.J. at 288 (quoting Athorn, supra, 46 N.J. at 251).

Thus, the holding in Loftin on which defendant relies, that "a juror who has formed an unalterable opinion of the

defendant's guilt or innocence must be excused from service on the panel," 191 N.J. at 187, does not speak to whether a post-verdict allegation that a juror formed such an opinion would warrant a new trial. Indeed, the Court has held it insufficient to overturn a verdict already rendered. LaFera, supra, 42 N.J. at 110 (holding a juror having "reached what proved to be his final view sometime during the trial and communicated that view to two of his fellow jurors, does not warrant a new trial"). The Court in LaFera reasoned that a person

> inevitably reacts to what he hears as he hears it. He cannot avoid current impressions however much he wills to resist them. And although he may think those impressions are final, he cannot really know that they will endure. We may assume that many jurors begin the deliberations with strong convictions as to how the case should go, and then yield them to persuasion in the jury room. We instruct jurors to refrain from premature discussion in the hope that they will enter upon their deliberations with a maximum capacity to consider the views of others, but we cannot say a juror is guilty of misconduct because he reaches a conclusion before ideally he should.
>
> [Id. at 108-09.]

Thus, while acknowledging that a mistrial might be appropriate if a court learns in the course of trial "that a juror has expressed his view with apparent finality to fellow jurors or persists in premature discussions with them despite the court's instruction," the LaFera Court held such revelations

A-3491-15T2

after the verdict would not state sufficient grounds to invalidate it or to call back jurors to interrogate them about the comments.  Id. at 109-10.

New Jersey courts have long recognized the distinction between allegations of juror misconduct arising at trial and those first alleged after entry of a verdict, and the dangers to our system of justice posed by interrogating jurors about their secret deliberations for the purpose of invalidating a verdict.  See State v. Harris, 181 N.J. 391, 503 (2004), cert. denied, 545 U.S. 1145, 125 S. Ct. 2973, 162 L. Ed. 2d 898 (2005) (acknowledging the Court's repeated reaffirmance of the "high bar" defendants must hurdle to show good cause under Rule 1:16-1).  Because the alternate here came forward with her complaint about her fellow jurors only after entry of the verdict, Loftin is inapposite.  LaFera controls here.

Further, the Court's statement in LaFera that jurors who begin deliberations with strong convictions may yet yield to the persuasion of their fellow jurors, appears particularly apt here.  42 N.J. at 108-09.  Although the alternate claims she heard juror No. 2 say "that he was going to make sure this defendant (Griffin) would not 'get off' like the codefendant," and indicated that an "organized group of jurors decided to vote guilty even before summations were heard," the State notes that

the jury deliberated "for about a day and a half" before announcing its unanimous verdict.  The length of time the jurors deliberated and the absence of a complaint by any of them as to how those deliberations were conducted is inconsistent with the alternate's charge that defendant's fate was pre-ordained based on a comment made before deliberations had begun.

The complaining alternate did not participate in the jury's deliberations and cannot say what transpired in the jury room during those deliberations.  Defendant's speculations about why one of the deliberating jurors may have asked initially to serve as an alternate and whether another alternate was truthful in saying that car trouble prevented her from appearing, do not provide good cause for the court to interrogate any of the jurors after entry of the verdict.  See State v. DiFrisco, 174 N.J. 195, 241 (2002) (affirming trial court's refusal to interview jurors as affidavit submitted by defense counsel based on conversation with alternate juror did not suggest jurors actually considered inappropriate evidence during deliberations), cert. denied, 537 U.S. 1220, 123 S. Ct. 1323, 154 L. Ed. 2d 1076 (2003).

We likewise do not accept defendant's arguments that "an agreement" among some jurors made prior to deliberations to vote guilty, provides good cause for the order entered here.  First,

the certification submitted by defense counsel does not mention an agreement among jurors, and counsel sought a hearing only to determine if certain jurors "pressed for a guilty verdict" prior to deliberations. Second, although there is no doubt that a prior agreement among jurors to be bound to a particular result "when such agreement has the capacity to foreclose all subsequent discussion, deliberation, or dissent among jurors" is inappropriate, Shankman v. State, 184 N.J. 187, 200 (2005) (discussing impermissible quotient verdict), defendant has presented no proof that such an agreement existed among any of the deliberating jurors. His speculations provide no basis for post-trial voir dire pursuant to Rule 1:16-1. See State v. Marshall, 148 N.J. 89, 280, cert. denied, 522 U.S. 850, 118 S. Ct. 140, 139 L. Ed. 2d 88 (1997) (denying defendant's request to contact jurors after discharge as "allegations of extraneous influence lack any factual basis and rely on purest speculation").

We further do not accept that the court having limited the scope of its order to non-deliberating jurors, makes the policy arguments against intrusion into a jury's secret deliberations irrelevant. The prohibitions of Rule 1:16-1 are not limited to deliberating jurors. See State v. Freeman, 223 N.J. Super. 92, 118-20 (App. Div. 1988) (affirming trial court's refusal to

19

interview alternate juror pursuant to Rule 1:16-1), certif. denied, 114 N.J. 525 (1989). The "good cause" requirements of the rule apply equally to deliberating and non-deliberating jurors because the risks to the jury system presented by post-verdict investigation into juror misconduct are the same, regardless of whether the jurors actually participated in deliberations. Calling back these jurors after discharge is no less an extraordinary procedure because they did not participate in deliberations. See DiFrisco, supra, 174 N.J. at 241-42.

Finally, in order to provide guidance in such situations in the future, we comment briefly on the procedure employed here. In our view, defense counsel's telephone conversation with the alternate juror, albeit unsolicited, ran afoul of Rule 1:16-1. As we explained in State v. Young, 181 N.J. Super. 463, 471 (App. Div. 1981), certif. denied, 91 N.J. 222 (1982), a lawyer "should promptly advise any juror who approaches him that [the lawyer] may not discuss the matter and that [the lawyer] must promptly report any such communication to the trial judge." Further, we wrote that the lawyer "should encourage the juror to go directly to the judge to make any complaint or advise the judge what may have transpired if there appears to be any questions in the juror's mind." Ibid.

We believe that should have occurred here.  Although we have no reason to believe that defense counsel acted other than guilessly, instead of receiving the juror's allegations, defense counsel should have advised the alternate he was prohibited from speaking with her.  He should have urged her to contact the court and told her that he would do the same.  Upon receipt of that information, either from the juror, defense counsel, or both, the trial court should have promptly arranged for a conference with counsel to receive the alternate's complaint on the record.  See Davis v. Husain, supra, 220 N.J. at 288.  In that way, the trial judge could have assessed the alternate juror's credibility, instead of receiving the complaint through the filter of a lawyer's hearsay certification, and determined "whether a Rule 1:16-1 formal inquiry [was] warranted" under existing case law.[7]  Ibid.

Instead, the trial judge retired without taking the alternate's complaint, and a year has passed since entry of the verdict with no conviction entered and defendant remaining unsentenced.  Complaints of juror misconduct must be addressed fully and expeditiously to avoid such delays in the future.

---

[7] Our comments should not be read to imply any criticism of defense counsel.  The record regarding counsel's conversation with the juror is not extensive, and we accept counsel may well have taken some of these steps, notwithstanding they were not included in his certification to the court.

Because we have accepted counsel's representations of the alternate's allegations as true and found them insufficient, as a matter of law, to warrant the extraordinary procedure of calling back the jury for questioning, we reverse the order under review and remand for sentencing and the entry of a judgment of conviction. We do not retain jurisdiction.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3491-15T2